**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **IN RE: DIANE M. TARANGELO** | Case No. 05-42670-DOT |
| Chapter 7 Debtor | |
| | |
| **KEITH L. PHILLIPS, TRUSTEE** | |
| Plaintiff | |
| v. | Adversary Proceeding No. 06-03139-DOT |
| | |
| **NASRIN MOAZZENI** | |
| Defendant | |

### MEMORANDUM OPINION

Trial in this adversary proceeding was held June 5, 2007. Plaintiff is debtor's chapter 7 trustee Keith L. Phillips, whose complaint seeks to avoid transfers of the debtor's real property and resulting sales proceeds. This adversary proceeding is a core matter pursuant to 28 U.S.C. § 157. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and personal jurisdiction over all parties pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

For the reasons stated below, judgment will be entered in favor of the plaintiff trustee.

Procedural Background**.**

On October 15, 2005, debtor Diane Tarangelo and her husband, Arash Moazzeni, filed a joint petition under chapter 7 of the Bankruptcy Code. Following a review of the petition, the joint debtors' chapter 7 trustee and the Office of the United States Trustee raised significant questions regarding the reported information on the debtors' schedules. Both the trustee and the U.S. Trustee filed multiple requests for extensions of time to object to the debtors' discharge and conducted rule 2004 examinations of debtors regarding information on their schedules and supporting documents. On November 1, 2006, the debtors moved to convert their case from

chapter 7 to chapter 13 . The trustee filed an objection to the conversion motion, and subsequently the trustee reached a settlement with the debtors whereby Mr. Moazzeni was allowed to convert his case to chapter 13 with strict conditions regarding a proposed plan; debtor Diane M. Tarangelo remains in the present chapter 7 case. The chapter 7 case of Mr. Moazzeni was converted to chapter 13 on January 19, 2007 (case no. 07-30177-DOT).

On October 10, 2006, the trustee filed a complaint against Mr. Moazzeni's sister, defendant Nasrin Moazzeni, for recovery of property of the estate. In the six-count complaint, the trustee sought to (I) compel turnover of property of the estate pursuant to 11 U.S.C. §§ 541 and 542; (ii) avoid and recover fraudulent transfers and voluntary conveyances pursuant to Virginia Code §§ 55-80 and 55-81, and 11 U.S.C. §§ 544 and 550; (iii) avoid and recover a post-petition transfer pursuant to 11 U.S.C. §§ 549 and 550; and (iv) recover damages for a willful violation of the automatic stay pursuant to 11 U.S.C. § 362.

Prior to trial, the defendant Ms. Moazzeni agreed with the trustee to release some of her interests that were the subject of the complaint. She released her post-petition lien on real property of the debtor located in Bath County, Virginia, which property was the subject of claims for post-petition transfer and willful violation of the stay. Additionally, she agreed to cooperate in the turnover of property that was the subject of claims under 11 U.S.C. §§ 541 and 542, specifically a bank account no longer in use with overdraft protection in the form of a line of credit. The only issues presented to the court for trial were related to 1) the trustee's claim to avoid the defendant's conveyance of her residential real property and 2) the trustee's attempt to recover sales proceeds from the transfers of the real property as fraudulent and voluntary transfers pursuant to Virginia Code §§ 55-80 and 55-81.

Findings of Fact.

In their joint chapter 7 bankruptcy petition, debtor Diane M. Tarangelo and her husband Arash Moazzeni listed their residence address as 7424 Secretariat Drive, Midlothian (Chesterfield County), Virginia. (Described in Pl.'s Ex. 5 as Lot 71, Section 7, Deer Run Subdivision.) In schedule F of their petition, they listed unsecured, nonpriority claims in a total amount of $370,081.05, of which at least $140,000 was either debtor Tarangelo's individual debt or joint debt of both debtors. Defendant Nasrin Moazzeni is listed in schedule F as an unsecured creditor of Mr. Moazzeni, individually. The schedules reveal no indebtedness of debtor Tarangelo to defendant Nasrin Moazzeni.

THE REAL ESTATE TRANSACTIONS AND CASH TRANSFERS

**Real Property in Midlothian, Chesterfield County, Virginia**

An account in the Richmond, Virginia, office of the brokerage firm Scottrade, Inc., was opened in the name of defendant Nasrin Moazzeni by an application dated June 12, 2003. The application listed defendant's home and employer addresses as 7424 Secretariat Drive, Midlothian, Virginia, and her occupation as a self-employed "consultant (statistics)." (Pl. Ex. 8; Affidavit of Chris Meitz.) However, defendant did not reside at that location in June 2003 or subsequently.[1] For some period of time prior to the opening of the Scottrade brokerage account in 2003, the residential real property located at 7424 Secretariat Drive, Midlothian, Virginia, was titled solely in the name of debtor Diane M. Tarangelo. The property was the residence of debtor

---

[1] In fact, defendant is a resident of California and currently lives in Sunnyvale, California; defendant had never traveled to Virginia prior to the trial in this case. (Tr. 14, 32-34.) Defendant currently works at the Iranian Christian Church near her home in California and earns $15.00 per hour. (Tr. 30.)

and her husband Mr. Moazzeni.

Defendant signed several powers of attorney giving Mr. Moazzeni authority to sign her name to documents. Mr. Moazzeni had access to act on defendant's behalf with respect to the Scottrade brokerage account under defendant's power of attorney. (Tr. 43-44, 52-53, 55.)

Prior to April 2004, Mr. Moazzeni suggested that his sister, the defendant, purchase the debtor's house as an investment property. (Tr. 32-33.) Defendant agreed with debtor Tarangelo and Mr. Moazzeni to enter into a transaction whereby title to the real property would be transferred to her. The parties obtained an appraisal of the property in April 2004 that reflected fair market value of $147,000. On April 6, 2004, defendant and debtor executed a form of purchase contract for the property for a price of $147,000.00. (Pl. Ex. 5., Def. Ex. D.) On April 3, 2004, Mr. Moazzeni transferred the sum of $24,000.00 to defendant's Scottrade brokerage account from funds that he had borrowed from his employer's thrift savings plan. (Pl. Ex. 9.) From these funds in the brokerage account, defendant made a down payment on the house transfer. (Tr. 40.)

In connection with the property transfer, Mr. Moazzeni filled out a mortgage loan application form on behalf of defendant and sent the form to her for signature. (Pl. Ex. 2, Tr. 35-36.) The application, which stated that defendant intended to occupy the property as her primary residence, revealed no employment or income information for defendant and listed a 2001 Nissan Maxima as her sole asset. The loan application was filed with Central Virginia Mortgage in Richmond, Virginia. Mr. Moazzeni advised the mortgage company that defendant wanted a "no doc" type of loan that did not require verification of defendant's income or employment. (Pl. Ex. 3.)

Title to 7424 Secretariat Drive was transferred from debtor to defendant following a settlement that took place on October 6, 2004. (Pl. Ex. 6.) As down payment for the transfer, Mr. Moazzeni caused approximately $34,000.00 to be wired to the settlement agent from defendant's Scottrade brokerage account on October 5, 2004. (Pl. Ex. 8.) Debtor received $28,112.44 at settlement. From these funds, debtor returned at least $28,000 to defendant; this sum was received in defendant's Scottrade account on October 20, 2004. (Pl. Ex. 6, 8; Tr. 22.) Following the transfer, debtor and Mr. Moazzeni continued to reside in the house pursuant to a rental contract dated October 24, 2004. (Pl. Ex. 7, Tr. 14.)

In the joint bankruptcy petition filed by Mr. and Mrs. Moazzeni, paragraph 10 of the Statement of Financial Affairs states that the $28,112.44 received by debtor at settlement was used for the personal living expenses of the joint debtors.

**Real property in Bath County, Virginia**

In February 2005, debtor purchased an undeveloped parcel of land in Bath County, Virginia. On November 29, 2005, debtor executed a deed of trust against the property in favor of defendant, which was duly recorded in the appropriate recording office of Bath County. The deed of trust stated that it secured debtor's promissory note in the amount of $39,800.00 payable to defendant and evidencing a loan of defendant to debtor. Debtor did not request approval of the Bankruptcy Court to encumber the property with a deed of trust. Although the trustee in his complaint sought to set aside this deed of trust, defendant released the deed of trust prior to trial.

**Second deed of trust on Midlothian real property**

After debtor transferred her Midlothian property to defendant, Mr. Moazzeni arranged for defendant to take out a second deed of trust loan on the property, in an amount exceeding

5

$50,000.00. The date of this loan is not revealed in the trial record. Defendant used $21,176.79 of these funds to draw a check dated October 5, 2005, to pay off a prior deed of trust lien on the real property acquired by debtor in Bath County. (Def.'s Ex. F; Tr. 65-68.)

DEBTOR TARANGELO WAS INSOLVENT AT THE TIME OF HER CASH TRANSFER OR WAS RENDERED INSOLVENT BY THAT TRANSFER.

On October 20, 2004, the date that debtor transferred $28,000.00 to defendant, debtor was insolvent or was rendered insolvent in that following the transfer the amount of her joint or individual debt exceeded the value of her jointly or individually owned assets, and she had insufficient property to pay her debts. (Pl. Ex. 18, Schedules A, B, E, F.)

BUENA TERRA PARTNERS

Defendant, Mr. Moazzeni, and debtor were partners in a real estate investment partnership named Buena Terra Partners.(Tr. 59.) Mr. Moazzeni prepared supplements to the partnership's 2004 tax return, which had not yet been filed on the date of trial, listing closing costs in the amount of $8,188.00 from the sale of the property at 7424 Secretariat Drive as partnership expenses. (Pl. Ex. 17; Tr. 63.)

Additional facts are stated below.

Discussion and Conclusions of Law.

Debtor's chapter 7 trustee brought this adversary proceeding to avoid the transfer of title to debtor's residential real property from debtor to her sister-in-law, defendant Nasrin Moazzeni, and to avoid the debtor's transfer of $28,000.00 of proceeds she received from this transaction to defendant. In connection with the avoidance of the transfers, trustee also seeks an *in personam* money judgment against defendant.

The trustee is proceeding under 11 U.S.C. § 544(b)(1), which provides that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). Two Virginia Code provisions are potentially applicable to the facts of this case. Section 55-80 of the Virginia Code ,Va. Code Ann. § 55-80 (2003), provides authority for a court to avoid a transfer in fraud of creditors, and § 55-81, Va. Code Ann. § 55-81 (2003), allows the avoidance of a transfer made without consideration (voluntary conveyance). The trustee seeks to avoid debtor's transfer of her real property to defendant under § 55-80 as a fraudulent transfer and debtor's transfer of $28,000.00 to defendant as both a fraudulent transfer under § 55-80 and a voluntary conveyance under § 55-81. The burden of proof is on the trustee under both of these statutes.

AVOIDANCE OF TRANSFER OF REAL PROPERTY — Virginia Code § 55-80

Virginia Code § 55-80 renders void, "[e]very gift, conveyance, assignment or transfer of, or charge upon, any estate. . .given with intent to delay, hinder or defraud creditors . . . ." Further, "[t]his section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." Va. Code Ann. § 55-80.[2]

The trustee has the burden of proof to establish the elements necessary to avoid a

---

[2] Bankruptcy Code § 548 also authorizes setting aside a fraudulent conveyance. However, the real property transfer at issue in this case took place more than one year before debtors filed their petition. At that time § 548 applied only to transfers made within one year of a debtor's petition filing. With the various changes to the Code in 2005, § 548 was amended to apply to transfers made within two years. 11 U.S.C.A. § 548 (West 2004 & Supp. 2007). As a practical matter, there is little difference in this case as between §§ 544 and 548 because case law under Virginia Code § 55-80 closely parallels that under § 548.

fraudulent transfer under § 55-80. Cooper v. Ashley Commc'ns NC, Inc. (In re Morris Commc'ns), 914 F.2d 458 (4th Cir. 1990). In cases where there is little or no direct proof of a transferor's intent to delay, hinder or defraud creditors, the court may rely upon circumstantial evidence. A plaintiff may make a prima facie, circumstantial case based on factors surrounding the transfer. These factors are referred to as "badges of fraud," which are circumstances surrounding a transaction that are indicative of a debtor's intent or state of mind. Hutcheson v. Savings Bank of Richmond, 129 Va. 281, 284, 105 S.E. 677, 680-681 (1921).

> The badges of fraud have been stated to include: (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor . . . [by creditors] at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by the transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

Hyman v. Porter (In re Porter), 37 B.R. 56, 63 (Bankr. E.D. Va. 1984); see also Gold v. Laines (In re Laines), 352 B.R. 397, 403 (Bankr. E.D. Va. 2005).

Although the burden of proof remains on the trustee, once the trustee establishes a prima facie case by showing the presence of badges of fraud, a rebuttable presumption of fraud arises, and the burden of going forward may shift to the defendant to present evidence that the transfer was made in good faith. Temple v. Jones, Son & Co., 179 Va. 286, 298, 19 S.E.2d 57, 62 (1942); "[w]here the transaction assailed is between . . . near relatives, only slight evidence is required to shift the burden of showing its bona fides." Hyman v. Porter, 37 B.R. at 63 (quoting Fowlkes v. Tucker, 164 Va. 507, 180 S.E. 305, 305 (1935)).

The facts in this case are relatively simple. Debtor Tarangelo was the sole owner of her residence, 7424 Secretariat Drive, Midlothian, Virginia. Just over a year before the joint debtors filed this bankruptcy case, debtor transferred title to the residence to defendant. At settlement for

this transfer on October 6, 2004, debtor received $28,112.44 as the net due her under the purchase contract. Two weeks later, on October 20, debtor transferred $28,000.00 back to defendant.

Although the defense witnesses failed to explain at trial why the cash was not returned to defendant until two weeks after settlement, they testified that debtor returned the money to defendant as repayment of outstanding loans. This testimony was not supported by any documentary evidence (notes or contemporary memoranda, etc.) of the existence of loans to debtor by defendant prior to the transfer of property nor by any other credible evidence.[3]

The defense presented an undated spread sheet that purports to reflect various loans by defendant to debtor and Mr. Moazzeni. (Def. Ex. F., first page.) The court does not consider this exhibit as credible evidence of the existence of loans to debtor before the property transfer. Defendant testified that the statement was prepared by Mr. Moazzeni at her request and that it is accurate. (Q. "Is it Accurate?" A. "Yes." Tr. 68.) However, in his testimony Mr. Moazzeni did not identify the exhibit or attempt to explain it, and the court infers that it was prepared for purposes of the trial. In light of defendant's almost complete lack of recall of the specifics of transfers arranged by Mr. Moazzeni, the court disregards her statement that the exhibit is accurate.

What the trial record discloses is a series of transactions orchestrated by Mr. Moazzeni with the tacit consent and participation of debtor and defendant. In June 2003, Mr. Moazzeni applied for and opened a brokerage account in defendant's name in the Richmond office of Scottrade, Inc. Defendant gave him several powers of attorney to deal with the account as he saw fit. The application for the account prepared by Mr. Moazzeni stated that defendant was self

---

[3] One loan from defendant to debtor was evidenced by a promissory note signed after the transfer of the real property. (Pl. Ex. 14.)

employed as a statistics consultant making $69,500.00 per year and listed her address as 7424 Secretariat Drive, Midlothian Virginia. Defendant testified that her brother made arrangements for money transfers to and from the account pursuant to his power of attorney.

In the Spring of 2004, Mr. Moazzeni suggested to his sister that she buy debtor's Midlothian residence as an investment, and a contract was signed on April 6, 2004. On April 3, 2004, Mr. Moazzeni borrowed $24,000.00 from his own thrift savings plan and deposited this sum in debtor's brokerage account. No evidence has been presented as to why he put these funds into the account. However, this money was available to be used toward the purchase price of the Midlothian property the following October.

In connection with the real property transfer, Mr. Moazzeni prepared a mortgage loan application in defendant's name. The application stated that defendant intended to occupy the Midlothian property as her residence. The type of loan applied for did not require verification of defendant's income. The application listed a 2001 Nissan Maxima as her sole asset.

Notwithstanding the representations in the brokerage and loan applications, defendant did not live in Midlothian, nor apparently did she ever intend to live there. (Tr. 38.) She lived then and now in California, and she had never been in Richmond until the trial of this proceeding. Although Mr. Moazzeni put in defendant's brokerage application that defendant was a self employed statistics consultant earning $69,500.00 per year, defendant did not confirm this at trial. She testified that around the time of the loan application, she had worked for her brother-in-law, testing computers. (Tr. 45-46.) She currently is employed as a church secretary near her home and earns $15.00 per hour. (Tr. 30.)

Other evidence in the record contradicts and undermines the defense assertion that the

$28,000.00 payment from debtor to defendant was a loan repayment: 1) Paragraph 10 of the joint debtors' statement of financial affairs included with their joint bankruptcy petition filed on October 15, 2005, states that they used the $28,000.00 from the Midlothian transfer for living expenses, 2) Schedule F of the petition lists defendant as a creditor of Mr. Moazzeni only, 3) paragraph 3 b. of the joint statement of financial affairs states that there were no loan repayments to an insider within the previous year, [4] and 4) Mr. Moazzeni, in preparing an income tax return for Buena Terra Partners, a real estate partnership of both debtors and defendant, listed the closing costs of the sale of the Midlothian real property as expenses of the partnership.

Defendant was familiar with debtor's and Mr. Moazzeni's financial condition, as she testified that she spoke often by telephone to her brother, and she had provided credit cards in her name for their use. At the same time, it is apparent from defendant's testimony at trial that she had little knowledge of the details of various transactions at issue here. She did not discuss the transactions with debtor but instead followed her brother's instructions and allowed him complete access to deal with her financial affairs. Nevertheless, defendant knowingly participated in the transfers of property and cash and took advantage of Mr. Moazzeni's efforts to remove debtor's property from the reach of creditors.

The pattern of suspect transfers was continued by debtor and defendant when debtor conveyed a deed of trust in favor of defendant on November 29, 2005, against the Bath County property that debtor purchased post-petition. The deed of trust was to secure defendant's purported loan to debtor in the amount of $39,800.00. The trustee's complaint in this proceeding

---

[4] Under Code § 101(31)(A), an insider of an individual debtor includes a relative or a partner of the debtor. The $28,000.00 transfer to defendant was made on October 20, 2004.

included a count to set this transfer aside, but defendant released the deed of trust prior to trial.

There are several of the Hyman v. Porter badges of fraud present in this case:

1) There was a transfer of property between family members for allegedly antecedent debt.

2) There was a lack of consideration for the conveyance. If there was no outstanding loan due to defendant from debtor, the transfer of the Midlothian property was made for no consideration to debtor. The potential value in the real property is demonstrated by defendant's later stripping $50,000.00 in equity from the property with a second deed of trust loan.

3) Debtor retained possession of the transferred property under a rental contract.[5]

At the time of the transfers, the debtors had excessive debt, which would drive them into bankruptcy in a year. Considering this debt and the presence of badges of fraud, the court finds that the trustee has established a prima facie case of fraud. Mr. Moazzeni transparently manipulated debtor's and defendant's property, and they acquiesced in this conduct. Accordingly, the burden of proof is shifted to the defendant to prove there was consideration for the transfers, i.e., existence of a loan owed by debtor to defendant. Hyman v. Porter, 37 B.R. at 61.

> Fraud should be inferred when the facts and circumstances are such as would lead a reasonable man to the conclusion that a debtor has attempted to withdraw his property from the reach of his creditors with the intent to prevent them from recovering their just debts. If such fraudulent intent is thus established *prima facia*, it must be regarded as conclusively established unless rebutted by facts and circumstances which are proven.

Id. at 63-64.

An alternative explanation of the transfers has not been proven by the defendant.

---

[5] Debtor testified that she paid defendant rent of $750.00 to $800.00 per month, which effectively paid defendant's mortgage payment. (Tr. 17, 41.)

Defendant has therefore not met her burden to show the transaction was supported by consideration. Accordingly, the court finds that debtor transferred the real property to defendant with the intent to hinder, delay or defraud her creditors.

The safe harbor provision of § 55-80, a provision that the application of the statute does not affect the title of a purchaser for valuable consideration, does not protect defendant. Section 55-80 protects a transferee for value only if the transferee is unaware of the fraudulent intent of the grantor. As set forth above, that is not the case here. Accordingly, defendant is not protected by the safe harbor provision, and the transfer will be avoided pursuant to Virginia Code § 55-80.[6]

AVOIDANCE OF TRANSFER OF SALES PROCEEDS - Virginia Code §§ 55-80, 55-81

The trustee seeks to avoid debtor's October 20, 2004, transfer of the $28,000.00 of sales proceeds to defendant. In addition to his position that this was also a transfer made with intent to delay, hinder or defraud creditors, voidable under Virginia Code § 55-80, the trustee also asserts the transfer may be avoided as a voluntary conveyance pursuant to Virginia Code § 55-81. This provision allows avoidance of a transfer, "which is not upon consideration deemed valuable at law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent." A voluntary conveyance under § 55-81 is voidable as to creditors whose claims existed at the time of transfer. It does not require proof of a fraudulent intent. The trustee stands in the shoes of

---

[6]Section 548(c) of the Bankruptcy Code contains a similar safe harbor:
> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

creditors and pursuant to 11 U.S.C. § 544 may bring this cause of action. See James River Coal Co. v. Crawford,, 360 B.R. 139, 168 (Bankr. E.D. Va. 2007). Debtors' joint schedules of debt show that there were many creditors in existence on October 20, 2004.

Statements from the Scottrade brokerage account set up by Mr. Moazzeni for defendant show that $28,000.00 was received in the account on October 20, 2004. The debtor testified at trial that she turned over to defendant $28,000.00 of the proceeds received by her at settlement on October 5 as repayment of indebtedness. However, the court has already found that the burden of proof has shifted to defendant to prove the existence of such an indebtedness, and she has failed to carry her burden.

The court has also previously found as a fact that debtor was insolvent at the time of the $28,000.00 transfer to defendant or was rendered insolvent by that transfer. For purposes of Virginia Code § 55-81, a debtor is insolvent when he or she has insufficient property to pay debts. Hudson v. Hudson, 249 Va. 335, 340-341, 455 S.E.2d 14, 17 (1995). The Bankruptcy Code provides that an individual is insolvent when the sum of debts exceeds all property. Defendant is insolvent under either definition. Sufficient evidence of her insolvency at the time of the transfer is found in the schedules included with the joint bankruptcy petition. The schedule of assets reveals that on the petition date, debtor held individual or joint assets of less than $50,000.00 in value; her individual or joint debt incurred prior to 2004 (as reflected in her debt schedules) totaled well over $100,000.00. Even allowing for the possibility that debtor held additional assets on October 20, the schedules provide sufficient evidence that her liabilities exceeded her assets at the time of the transfer and that she was unable to pay her debts.

The court finds that this $28,000.00 was transferred to defendant for no valuable consideration, depleting the bankruptcy estate of a valuable cash asset, that she was insolvent at the time of the transfer or was rendered insolvent as a result and that the transfer is avoidable under Virginia Code § 55-81. Additionally, the transfer is avoidable under § 55-80 because it was made with intent to delay, hinder or defraud creditors. The rationale for this holding under § 55-80 is the same as previously discussed with respect to the real property transfer.

REMEDIES - *IN PERSONAM* JUDGMENT

**Sales Proceeds Returned To Defendant**

An *in personam* judgment may be entered against transferees of a fraudulent conveyance when appropriate under the circumstances. Price v. Hawkins, 247 Va. 32, 37, 439 S.E.2d 382, 385 (1994). In Price, cash was transferred fraudulently and the court found that to merely declare the transfer "void" was "meaningless in terms of relief to the defrauded creditor." Id. See also Wellington Apartment, LLC v. Clotworthy, (In re Wellington Apartment, LLC), 350 B.R. 213, 246-47 (Bankr. E.D. Va. 2006)(the plaintiff debtor was granted *in personam* judgment where the avoidance of a transfer under Virginia Code § 55-81 did not leave the plaintiff with an effective remedy).

In this case, the debtor transferred $28,000.00 in cash proceeds to defendant, along with the real property located at 7424 Secretariat Drive, Midlothian, Virginia. Much like the circumstances of Price, mere avoidance of the transfer of the $28,000.00 does not result in any real recovery to the creditors. The trustee must have the ability to collect the money from defendant. Therefore, judgment will be entered against defendant in the amount of $28,000.00, representing the fraudulent and voluntary transfer of the sales proceeds.

**Second Deed of Trust Proceeds**

The trustee also requests an *in personam* judgment against defendant based upon defendant having taken out a second deed of trust loan of at least $50,000.00 on the Midlothian property following the transfer. Trustee argues that defendant stripped this amount of equity from the property and that there is no benefit to creditors by the court merely avoiding the real property transfer and returning the property to the trustee when it has no apparent equity. As the court has found, defendant used the sum of $21,176.79 from the loan proceeds to pay off an existing deed of trust on debtor's property in Bath County. Trustee concedes that defendant should be credited with this payment but argues that defendant has not shown what happened to the balance of the $50,000.00. Thus the trustee asks for an *in personam* judgment against defendant in the net amount of $28,823.21.

Debtor's Bath County purchase went to settlement on or about February 13, 2005. (Pl. Ex. 14.) On brief, defendant's counsel argues that in addition to the payoff of $21,176.79, defendant paid $15,000.00 toward the purchase of this property, for which she should be credited. With regard to this argument, the court is faced with an imperfect record. In the first place, the only evidence at trial regarding the second deed of trust loan is the rather unsatisfactory testimony of defendant acknowledging that she took out a line of credit loan on the Midlothian property. When asked about the amount of the loan, she stated she did not know the exact amount but then stated it was more than $50,000.00. (Tr. 65-66.) That's it for evidence on this loan! The court can find no loan date in the record; there are no supporting documents, nor is there evidence by which the court might trace defendant's disposition of the loan funds.

Defendant's Exhibit F, a part of which the court discussed previously, contains entries that

purport to reflect four loans by defendant to debtor in 2005. Three of the loan entries are dated February 2005, the month of the Bath County purchase; they show a wire transfer of $7,000.00 and bank deposits in the respective amounts of $4,000.00 and $3,000.00. The fourth loan entry is dated October 5, 2005, and shows a loan by check to pay off the Bath County deed of trust of $21,176.79. The $7,000.00 wire transfer loan is supported by another document in Exhibit F, a letter dated February 15, 2005, ostensibly signed by defendant; this letter instructs an account representative at Scottrade to wire transfer $7,000.00 in funds from defendant's account to the ultimate credit of the settlement agent for the Bath County real property purchase. In her testimony, defendant was questioned about her loans to debtor with respect to the Bath County purchase. (Tr. 66-67.) While her testimony is again unsatisfactory, one interpretation is that for the Bath County property she had loaned debtor a total of $28,000.00, including the deed of trust pay off. This figure would support the loan pay off plus the $7,000.00 wire transfer. The court gives no credence to the two loan entries (bank deposits) of $4,000.00 and $3,000.00, which could also represent the $7,000.00 wire transfer. Other evidence of how much defendant loaned debtor for Bath County is in the HUD-1 settlement statement for that purchase, which reveals that the purchaser was required to remit a payment of $11,813.12 at closing.

   Generally, in the case of a fraudulent transfer of real estate, a bankruptcy estate will be made whole by avoidance of the transfer itself, which permits the trustee to administer the real property for the benefit of the creditors. However, defendant here refinanced the property after the transfer and borrowed over $50,000.00. Presumably, this encompasses all of the equity available in the property, leaving the trustee with no effective remedy for the fraudulent conveyance. At the same time, the court is reluctant to require defendant to return this entire sum to the trustee if the

funds were used to debtor's benefit. The trustee has conceded as much with respect to the loan payoff of $21,176.79. The court finds merit to defendant's counsel's argument that defendant should receive credit for other loans that were used by debtor to purchase this property. (As far as the record shows, those funds might well have come from the $50,000.00 loan.) Because it is unlikely that debtor had the financial ability to make the down payment of $11,813.12 as revealed in the HUD-1, the court considers this the best evidence of the amount that defendant loaned debtor at the time of purchase. (This payment would have included the $7,000.00 wire transfer.) This amount will be allowed as additional credit against the $50,000.00 second deed of trust loan. Defendant is therefore entitled to credit in the total amount of $32,989.91.

Because defendant has been unable to account for the disposition of the balance of the $50,000.00 loan, the court finds that defendant stripped at least $17,000.00 from the equity in the Midlothian property. With no effective remedy available to the trustee by the mere avoidance of the transfer of the real property, judgment will be entered against defendant Ms. Moazzeni in the amount of $17,000.00 as additional damages for the fraudulent transfer of the Midlothian real property.

As discussed previously, the court has found that the burden of proof for the fraudulent transfer has shifted to defendant. Defendant therefore has the burden to prove that she did not benefit financially from the balance of the $50,000.00 loan, a burden she has been unsuccessful in carrying.

CONCLUSION

Based on the above, the court will enter an order avoiding debtor's transfers to defendant of (1) 7424 Secretariat Drive, Midlothian, Virginia. and (2) the sale proceeds of $28,000.00. The

court will also enter judgment against defendant in the amount of $45,000.00 as damages for the fraudulent transfers of the funds in the amount of $17,000.00 obtained from the second deed of trust placed upon the Midlothian real property and for the fraudulent transfer of the $28,000.00.

A separate order will be entered.

SIGNED: September 28, 2007

    /s/ Douglas O. Tice Jr.
DOUGLAS O. TICE JR.
CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

Copies to:

Peter J. Barrett, Esquire
Kimberly A. Pierro, Esquire
Kutak Rock LLP
1111 East Main Street, Suite 800
Richmond, Virginia 23219-3500
*Counsel for Keith L. Phillips, Trustee*

Robert A. Canfield, Esquire
Canfield Baer Heller and Johnston, LLP
2201 Libbie Avenue, Suite 200
Richmond, Virginia 23230
*Counsel for Nasrin Moazzeni*

Robert B. Van Arsdale, Esquire
Office of the United States Trustee
600 East Main Street, Suite 301
Richmond, Virginia 23219
*Assistant United States Trustee*